## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **NEMO DEVELOPMENT INCORPORATED,** ) ) ) **Plaintiff,** ) ) **v.** ) ) ) **COMMUNITY NATIONAL BANK,** ) **WILLIAM ALTMAN, JR., JERRY L.** ) **McPHERSON, AND VERNON F. LYNN,** ) ) **Defendants.** ) ) | **CIVIL ACTION** **No. 05-2201-CM** |

## MEMORANDUM AND ORDER

Plaintiff Nemo Development Incorporated ("Nemo") brings this action claiming that defendant Community National Bank ("CNB") improperly foreclosed on property in which it had no interest. Plaintiff also claims that William Altman, Jr., branch manager of CNB; Jerry L. McPherson, loan officer; and Vernon F. Lynn, loan officer, committed fraud, extortion, and blackmail. Defendants filed motions to dismiss and/or for summary judgment (Docs. 7 and 12). In those motions, defendants argue that the court lacks jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine, and alternatively argue that the claims are precluded by res judicata and that each of the claims fails on its merits. Defendants refer the court to the state court foreclosure proceedings, where they assert all of these issues have been addressed or could have been addressed. For the following reasons, the court grants defendants' motions.

**I.     STANDARDS OF REVIEW**

Defendants first move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling him to relief under his theory of recovery.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fiztgerald*, 457 U.S. 800 (1982).

Defendants have alternatively asked the court to grant summary judgment.  Because of the state court foreclosure proceedings, this case already has a well-developed record, and both parties have attached documents to their briefs in this matter.  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

**II.    FACTUAL BACKGROUND[1]**

On January 7, 2003, CNB filed a Petition for Foreclosure in Wyandotte County, Kansas, Case No. 2003C 00069.  CNB sought to foreclose against a lot purchase options contract between Nemo[2] and

---

[1] The uncontroverted facts are taken from the record and viewed in the light most favorable to plaintiff.

[2] The state court ultimately found that Mark Klinginsmith, a builder, "functioned through two
(continued...)

Pajadi, Inc. (the "Pajadi contract"). The Pajadi contract gave Nemo the option to purchase Lots 1 through 35 of Prestwick, a subdivision in Kansas City, Kansas, which is land surrounded by Dub's Dread Golf Course. In its Petition for Foreclosure, the bank asserted that Nemo had executed a security agreement in favor of CNB, pledging Nemo's equipment, accounts, and general intangibles, including Nemo's rights in the Pajadi contract.

In the Wyandotte County case, Mark Klinginsmith and Nemo filed a Counterclaim. Mr. Klinginsmith also filed a Third-Party Petition against William Altman, Jr. The Counterclaim alleged violations of the Truth in Lending Act and the Real Estate Settlement Procedures Act, as well as a negligent and faulty advice claim against CNB based on Mr. Altman's conduct. The Third-Party Petition contained a claim for erroneous, negligent, and faulty advice against Mr. Altman relating to the titling of a lot and subsequent house which Mr. Klinginsmith claimed was his residence, but which was titled in the name of Nemo Development, Inc.

On March 14, 2003, counsel for Pajadi, Inc. notified the parties that the Pajadi contract had been terminated. Pajadi, Inc. sought dismissal of claims related to it, and dismissal occurred on April 10, 2003.

James D. Loeffelbein and Terrie L. Pham later intervened in the foreclosure action, alleging an equitable mortgage on "Four Lots" in the Prestwick subdivision, stemming from a $110,000 loan by Ms. Pham to Nemo. They counterclaimed against CNB over Prestwick Lots 20, 21, 27 and 32, contending

---

[2] (...continued)
corporations both bearing the same name, 'Nemo Development, Inc.'" The court further noted that "[d]espite conflicting evidence on the use of this name, . . . these corporations were functionally the same and an instrumentality of [Mr.] Klinginsmith. . . ." One of the Nemo corporations was a Kansas corporation, and the other a Missouri corporation. The plaintiff in this case is the Kansas corporation. This court will not distinguish between the actions of the two corporations, as the state court has ruled that they should be treated as the same entity, and this court will not disturb that ruling.

they were entitled to a first mortgage and that CNB's mortgage was obtained by fraud. Ms. Pham also asserted a claim for foreclosure against Nemo, and Nemo admitted that Ms. Pham was entitled to foreclosure in its Answer.

At the state court pretrial conference, counsel for CNB, Mr. Loeffelbein, and Ms. Pham announced they had settled all claims and that an agreed journal entry of foreclosure on the Four Lots would occur, with Ms. Pham assigning her note to CNB. Before trial, Nemo sought to amend its Counterclaim. The proposed counterclaims related to the Padaji contract and alleged tortious interference, negligent foreclosure, slander of title, and invasion of privacy. The state court denied the amendments as "too late in the game to be brought right before the eve of trial." The same claims are included in the instant action.

In June 2004, a foreclosure order was entered on the Four Lots. The order recited that CNB's mortgage was a first and valid lien, entered judgment for CNB against Nemo and Mr. Klinginsmith for the $110,000 note, plus interest (assigned by Ms. Pham to CNB), and dismissed with prejudice all claims against CNB and Mr. Altman.

The state court conducted a bench trial in late June 2004, resulting in a Journal Entry and Judgment of Foreclosure entered in July 2004 against Nemo and Mr. Klinginsmith. Nemo appealed various orders, but not the June 2004 order relating to the Four Lots. In August 2005, the state court entered a final order granting summary judgment and foreclosure of the remaining property, including several Prestwick lots owned by Nemo, as well as Nemo's inventory, equipment, accounts receivable, and general intangibles.

Nemo filed the instant case on May 16, 2005. In its complaint, Nemo alleges that (1) defendants CNB and Altman wrongfully foreclosed on plaintiff's interest in the Pajadi contract, building materials, inventory, and equipment, and the Four Lots; (2) defendants CNB and Altman are responsible for

negligently initiating the foreclosure action; (3) defendants CNB and Altman committed slander of title by asserting a false interest in the Pajadi contract property, plaintiff's building materials, inventory, and equipment, and the Four Lots; (4) CNB's foreclosure on the Pajadi contract was intended to tortiously interfere with the contractual relationship between plaintiff and Pajadi, Inc.; (5) CNB violated plaintiff's privacy by disclosing the terms of the Pajadi contract in its foreclosure petition; (6) CNB's foreclosure on the Pajadi contract constituted malicious prosecution; (7) defendants' officers committed fraud; (8) defendants violated anti-tying laws by requiring plaintiff to provide construction materials and/or construction services on personal homes in return for loans from CNB; and (9) defendants violated RICO by participating in a scheme and artifice to defraud and steal plaintiff's interest in the Pajadi contract by false pretenses.

## III.   DISCUSSION

**A.   Law Applicable to All Counts - *Rooker-Feldman* Doctrine and Res Judicata**

Defendants argue that all of the claims in this case are barred by either the *Rooker-Feldman* doctrine or res judicata. The *Rooker-Feldman* doctrine is a jurisdictional bar to federal review of state court decisions. *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 706-07 (10th Cir. 2004). The doctrine prevents a party who lost in state court from seeking what substantively would be appellate review of the state judgment in a United States district court, based on a claim that the state judgment itself violates the loser's federal rights. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923).

Res judicata, on the other hand, is an affirmative defense that must be raised and established by a defendant. Fed. R. Civ. P. 8(c). Res judicata functions on the premise that the finality of earlier judgments

-5-

must be advanced and adhered to by subsequent courts. 18 James Wm. Moore, Moore's Federal Practice § 131.13[1] (3d ed. 1999). Under res judicata, a final judgment on the merits precludes the parties or their privies from relitigating any claims that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine "'prohibits a party from asserting any matter that might have been asserted in the previous cause of action, even if it was not actually asserted.'" *Prospero Assocs. v. Burroughs Corp.*, 714 F.2d 1022, 1025 (10th Cir. 1983) (citation omitted). For the doctrine to apply, three conditions must be satisfied: (1) the parties must be identical or in privity; (2) the suit must be based on the same cause of action; and (3) a final judgment on the merits must have been made in the prior action. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (citing *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).

The court finds that the *Rooker-Feldman* doctrine does not apply to plaintiff's claims. Plaintiff does not claim that the state court decision violates his federal rights. *See Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. at 416. For this reason, the court asserts jurisdiction over plaintiff's claims.

Res judicata, however, does act to bar plaintiff's claims. The parties in this case are the same as in the state court action,[3] this suit is also based on CNB's foreclosure activities, and a final judgment on the

---

[3] The court recognizes that defendants McPherson and Lynn were not parties in the state action. But plaintiff may not relitigate issues which could and should have been raised earlier by the "simple expedient of naming [defendants McPherson and Lynn] as [defendants] in another action." *Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1276 (10th Cir. 1989); *see also* Restatement (Second) of Judgments § 29, at 291 ("A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person. . . ."). The allegations against defendants McPherson and Lynn would have been relevant to whether the mortgages involved in the state action were procured by fraud. Moreover, the claims against these defendants fail for the other reasons stated in this Memorandum and Order.

merits has been rendered in the state court action.[4] Res judicata therefore prohibits relitigation of the adjudicated claims and litigation of any claims that could have been raised in the state court action. *See Bolden v. City of Topeka*, 2004 WL 303521, at *7 (D. Kan. 2004); *see also Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) (applying res judicata where the plaintiffs failed to assert RICO claims in state court); *Cuervo Res., Inc. v Claydesta Nat'l Bank*, 876 F.2d 436, 436-37 (5th Cir. 1989) (affirming district court's application of res judicata when anti-tying claims were not brought in state court); *Lane v. Cent. Bank of Ala., N.A.*, 756 F.2d 814, 816 (11th Cir. 1985) (same). All of the claims here could have been raised in state court, with the exception of the malicious prosecution claim. Additional reasons that plaintiff's claims should be dismissed are discussed below.

**B.    Count I - Wrongful Foreclosure/Conversion**

Count I of plaintiff's complaint alleges that defendants CNB and Altman wrongfully foreclosed on plaintiff's interest in the Pajadi contract, building materials, inventory, and equipment, and the Four Lots. Plaintiff alleges that defendant CNB exercised "unlawful dominion and control of the Pajadi contract." Plaintiff does not make the same allegation with respect to building materials, inventory, or the Four Lots. Furthermore, plaintiff has since clarified that this claim is not for wrongful foreclosure on the Four Lots.

---

[4] In contrast to plaintiff's claims in its complaint, plaintiff's brief seems to focus on the claims relating to the Pajadi contract, arguing that there has never been an adjudication with respect to the contract. No ruling regarding the contract was necessary in state court because Pajadi, Inc. terminated the contract, cutting off any interest Nemo had in the contract. In any event, the state court held that Nemo Kansas and Nemo Missouri were a single entity. Plaintiff's arguments regarding why CNB had no interest in the Pajadi contract hinge on plaintiff's position that: (1) Nemo Missouri entered into the security agreement covering the Pajadi contract; (2) Nemo Missouri had no interest in the Pajadi contract; and (3) Nemo Kansas was the party who entered into the contract with Pajadi, Inc. In order for this court to find that CNB's foreclosure action regarding the Pajadi contract was improper, this court would have to rule that the state court erred in finding that Nemo Missouri and Nemo Kansas were the same entity. The doctrine of res judicata prevents the court from doing so.

This claim is barred by the two-year statute of limitations. *See* Kan. Stat. Ann. § 60-513(a); *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203, 1211 (D. Kan. 2005). Under Kan. Stat. Ann. § 60-513(b), a cause of action accrues when "substantial injury" occurs or, if not "reasonably ascertainable," when it "becomes reasonably ascertainable to the injured party." An injury is reasonably ascertainable when the plaintiff knew or could reasonably have been expected to know of the alleged wrongful conduct. *See Knight v. Myers*, 748 P.2d 896, 901 (Kan. App. 1988).

Plaintiff claims that CNB's wrongful act was filing the foreclosure action that sought an order directing the sale of the Pajadi contract. The foreclosure action was filed in January 2003. Even assuming the injury was termination of the Pajadi contract, the injury was reasonably ascertainable by March 2003. This action was not filed until May 2005. Count I is time-barred.

To the extent that plaintiff's claim is for conversion, the claim fails for another reason. To state a conversion claim under Kansas law, a plaintiff must allege deprivation of the use of property. *Cline*, 356 F. Supp. 2d at 1220 (citations omitted). Actual use or disposition of the property is required, and plaintiff has not alleged such use or disposition. *See Commerce Bank, N.A. v. Chrysler Realty Corp.*, 76 F. Supp. 2d 1113, 1118 (D. Kan. 1999), *rev'd on other grounds*, 244 F.3d 777 (10th Cir. 2001). For these reasons, Count I is dismissed.

**C.     Count II - Negligent Foreclosure**

In Count II, plaintiff claims that defendants CNB and Altman are responsible for negligently initiating the foreclosure action on the Pajadi contract property, plaintiff's building materials, inventory, and equipment, and the Four Lots. This negligence claim is also barred by the statute of limitations. A negligence action must be brought within two years of accrual. *See* Kan. Stat. Ann. § 60-513(a). Even

-8-

assuming the action accrued at the time of the termination of the Pajadi contract, the injury was reasonably ascertainable by March 2003.  Because this action was not filed until May 2005, Count II is untimely.

Moreover, the one-action rule requires that all negligence claims arising out of one occurrence be determined in one action.  *Mick v. Mani*, 766 P.2d 147 (Kan. 1988).  Nemo asserted a counterclaim for negligence in the state foreclosure action, and any other negligence claims arising out of the same occurrence should have been brought within the confines of the same action.

**D.     Count III - Slander of Title**

Count III is a claim for slander of title, in which plaintiff alleges that by filing the foreclosure action, defendants CNB and Altman asserted a false interest in the Pajadi contract property, plaintiff's building materials, inventory, and equipment, and the Four Lots.  Plaintiff claims that, as a result of defendants' slander of title, plaintiff was unable to sell or use any of the properties or supplies, inventory, or equipment.

Absolute privilege bars this claim.  "Slander of title is defined as 'a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury.'" *Safety Fed'l Savings & Loan Ass'n v. Thurston*, 648 P.2d 267, 270 (Kan. App. 1982) (quoting 50 Am. Jur. 2d, Libel & Slander § 539, at 1058).  Plaintiff claims that the false statement is contained in the foreclosure documents.  CNB is entitled to immunity against the use of lawsuit pleadings as evidence of a slander of title claim.  *See Clear Water Truck Co. v. M. Bruenger & Co.*, 519 P.2d 682, 685-86 (Kan. 1974) ("In this jurisdiction, if a statement or communication, given in the course of a judicial proceeding, is relevant to the issue involved therein it is privileged whether it be the testimony of a party or an affidavit filed in the proceedings.").

The slander claim is also time-barred.  *See LaBarge v. City of Concordia*, 927 P.2d 487, 494

(1996) (holding "the statute of limitations began to run on the date that the plaintiffs discovered that their title had been slandered" and rejecting continuous theory of slander). Per plaintiff's own allegations, the foreclosure lawsuit itself constitutes the discovery of the slander claim. A one-year statute of limitations applies to slander claims, *id.*, and the claim was filed out-of-time.

Finally, to the extent that plaintiff attempts to allege a negligent slander claim by citing the conduct of defendant Altman, such claim fails to state a claim upon which relief can be granted. A slander of title action requires malice. *See Safety Fed'l Savings & Loan Ass'n*, 648 P.2d at 270.

### E.   Count IV - Tortious Interference with Contract

Plaintiff claims in Count IV that CNB's foreclosure on the Pajadi contract was intended to tortiously interfere with the contractual relationship between plaintiff and Pajadi, Inc.

This claim fails on its face for two reasons. First, where the terms of a contract allow for termination, a tortious interference claim must be dismissed. *See Rodriguez v. ECRI Shared Servs.*, 984 F. Supp. 1363, 1366-67 (D. Kan. 1997). The Pajadi contract was terminated pursuant to its own terms. Under the contract, Pajadi, Inc. had the right to cancel the contract if Nemo did not purchase the minimum number of lots per an agreed-upon schedule. When Nemo failed to comply with this requirement, Pajadi, Inc. terminated the contract.

Second, under Kansas law, CNB is entitled to immunity against the use of lawsuit pleadings as evidence of a tortious interference claim. *See Clear Water Truck Co.*, 519 P.2d at 685-86.

### F.   Count V - Violation of Right to Privacy/Disclosure of Confidential Information

In Count V, plaintiff alleges that CNB disclosed the Pajadi contract in its foreclosure petition, when plaintiff held the expectation that CNB would keep the terms of the contract private. Plaintiff asserts that it

-10-

only gave CNB a copy of the contract for purposes of providing a statement of its financial assets.

This claim fails under the *Clear Water Truck Co.* rationale and because plaintiff is not an individual. Plaintiff is a corporation, and Kansas law does not recognize a corporate invasion of privacy action. Kansas follows the Restatement (Second) of Torts § 652I, which provides: "Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded." *Nicholas v. Nicholas*, 83 P.3d 214, 228 (Kan. 2004). For these reasons, the court dismisses Count V.

### G.     Count VI - Malicious Prosecution

Count VI of plaintiff's complaint alleges that defendants CNB and Altman foreclosed on the Pajadi contract without probable cause, and with malice and reckless disregard of plaintiff's property rights.

Plaintiff has not alleged that the prior proceedings were terminated in favor of plaintiff; in fact, the record before the court shows no resolution of the Pajadi contract foreclosure at all. CNB has not pursued the foreclosure, presumably because the Pajadi contract was terminated in March 2003 and Nemo no longer has an interest in the contract. A termination of proceedings in favor of plaintiff is necessary for a viable malicious prosecution claim. *See Nelson v. Miller*, 607 P.2d 438, 443 (Kan. 1980). Without allegations of favorable termination, the claim is merely a slander of title or defamation claim. The court has already explained why plaintiff's slander claim is time-barred, and the court will not allow plaintiff to recast its time-barred claim as a malicious prosecution claim. *See Taylor v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE)*, 968 P.2d 685, 691 (Kan. App. 1998) (holding that a tortious interference claim was a disguised slander claim and barred by the statute of limitations). Count VI is dismissed.

**H.     Count VII - Fraud**

Plaintiff alleges in Count VII multiple occurrences of fraud.  First, plaintiff alleges that on August 14, 2002, defendant Lynn advised Mr. Klinginsmith that plaintiff had committed bank fraud, and that defendant Lynn would report it to the appropriate authority unless Mr. Klinginsmith agreed to execute a Note and Mortgage in favor of CNB.  As a result of defendant Lynn's extortion and blackmail, plaintiff executed a promissory note for $250,000 and a mortgage on Lot 25 Prestwick.  Second, plaintiff alleges that defendant McPherson requested that plaintiff provide free building materials for the remodeling of and addition to his personal home.  Third, defendant Altman demanded that plaintiff provide, free of charge, a fence for his personal residence, and siding, replacement of windows, painting, sheet rock, and roofing for his daughter's home.  In return, defendants McPherson and Altman advised Mr. Klinginsmith that they would "take care of" plaintiff and assure CNB's favorable treatment of plaintiff in lending transactions.  Plaintiff provided the building materials as requested, in reliance on the representations of defendants Altman and McPherson.

Fourth, plaintiff alleges that defendant Altman offered to prepare a Note and Mortgage for plaintiff on the loan that Terri Pham and Jim Loeffelbein had agreed to give plaintiff.  Defendant Altman prepared the Note and Mortgage, but defendant Altman named CNB as the "lender" instead of Ms. Pham and recorded the mortgage on September 9, 2002.  Defendant Altman then advised Stewart Title Company that CNB was the lender, and instructed Stewart Title to deduct fees from the loan proceeds.

All of plaintiff's fraud claims, which are governed by a two-year statute of limitations, are time-barred.  *See* Kan. Stat. Ann. 60-513(a)(3).  With respect to the first claim, although defendant Lynn made the allegedly fraudulent statements on August 14, 2002, plaintiff claims that it did not discover the falsity of

defendant Lynn's statements until his deposition on July 31, 2003. But the allegations in plaintiff's complaint and previous papers contradict this argument. Plaintiff alleges that the loan and mortgage resulted from extortion and has alleged that the documents were signed under duress. Under these allegations, any fraud must have been evident upon execution of the instruments.

As for the claims regarding the requests of defendants McPherson and Altman, the allegations fail to comply with Fed. R. Civ. P. 9(b), so the court cannot discern a date upon which the statements were made. However, plaintiff alleges that defendants told Mr. Klinginsmith that they would "take care of" Nemo. CNB had refused to loan Nemo any more money by September 5, 2002, which indicates that the representations must have been made before that date.

And plaintiff's last fraud claim – the one involving Ms. Pham and Mr. Loffelbein – should have been evident, at the latest, when CNB filed the foreclosure action in January 2003. Moreover, the claim has already been resolved. A foreclosure judgment was entered on June 25, 2004, from which there has been no appeal. The court dismisses Count VII.

**I.      Count VII (second) - Anti-Tying Arrangement (12 U.S.C. § 1972)**

Plaintiff claims in Count VII (second) that defendants CNB, Altman, and McPherson imposed unlawful tying requirements on plaintiff in violation of 12 U.S.C. § 1972. Specifically, plaintiff claims that in return for procuring loans from CNB, defendants Altman and McPherson required plaintiff to provide construction materials and/or construction services for other personal homes.

Plaintiff fails to state a claim for several reasons: First, the Bank Holding Company Act, 12 U.S.C. §§ 1972 *et seq.*, cannot be asserted against individual bank officials. *Bieber v. State Bank of Terry*, 928 F.2d 328, 331 (9th Cir. 1991). Second, plaintiff alleges that defendants Altman and McPherson sought

personal favors. An anti-tying arrangement must consist of conduct which reflects a benefit to the bank. *Rae v. Union Bank*, 725 F.2d 478, 480 (9th Cir. 1984). Finally, the complaint fails to allege a "tying" arrangement, which requires two distinct products: a tying product in the market for which defendant has economic power, and a tied product, which defendant forces on consumers wishing to purchase the tying product. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984); *Alpine Elec. Co. v. Union Bank*, 979 F.2d 133, 135 (8th Cir. 1992). The complaint alleges only a loan and a personal benefit, not two bank products which are tied. Count VII (second) is dismissed.

**J.     Count VIII - RICO (18 U.S.C. § 1964(c))**

Count VIII is a RICO claim, in which plaintiff alleges that defendants Altman, McPherson, and Lynn participated in a scheme and artifice to defraud and steal plaintiff's interest in the Pajadi contract by false pretenses. Plaintiff alleges that defendant CNB is an "enterprise" under 18 U.S.C. § 1961(3) and 1964(c) and (d), and that defendants Altman, McPherson, and Lynn conducted or participated in the conduct of the enterprise's affairs. Plaintiff claims that they engaged in the following acts, which constituted a pattern of racketeering activity: (1) wire fraud; (2) mail fraud; and (3) violation of state law by extortion and blackmail.

Under § 1962(c), RICO makes it unlawful "for any person employed or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To properly allege a "pattern of racketeering activity," plaintiff must plead at least two "predicate acts" listed in 18 U.S.C. § 1961(1). *Raymark Indus., Inc. v. Stemple*, 714 F. Supp. 460, 469 (D. Kan. 1988). RICO requires that the acts be related and "amount to or pose a

threat of continued criminal activity." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

Although a "pattern" requires at least two acts, it does not "mean" two acts. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n.14 (1985). "The implication is that while two acts are necessary, they may not be sufficient." *Id.* "One of the prime considerations in finding a pattern is whether the predicate acts are both related and sufficiently differentiated. If the acts are too similar, then no ongoing design or continuity can be found." *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 646 F. Supp. 118, 120 (D. Del. 1986) (citation omitted). "'[T]he repetition of an act taken against a single victim or set of victims following closely on the heels of the original wrong, in some circumscribed circumstances . . . suggests no expansion, no ongoing design, no continuity, such as was the target of Congress in RICO.'" *Id.* (citation omitted).

The foreclosure filing and termination of the Pajadi contract occurred slightly over a month apart. This does not establish any continuity or the pattern requirements of RICO. *See Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928 (10th Cir. 1987) (indicating that RICO does not apply to "sporadic activity" or the "isolated offender"). Nor do the allegations against defendants Lynn and McPherson show a pattern. *See Edwards v. First Nat'l Bank*, 872 F.2d 347, 350 (10th Cir. 1989) (holding that two threats that plaintiff would go to jail if he did not repay loans did not reflect a RICO pattern); *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1208 (D. Kan. 2004) (holding that where acts were against a single victim or set of victims and similar, if not identical, no RICO claim existed). Before the court are allegations regarding one bank customer and one debt collection effort through a judicial foreclosure action. And

-15-

although plaintiff alleges that defendants engaged in wire fraud, mail fraud, extortion, and blackmail, the Complaint does not contain specific facts regarding those claims. RICO requires particular "assertions of time, place, and contents of false representations . . . [and] the identity of the person making the representation and what was obtained or given up thereby." *Hall v. Doering*, 997 F. Supp. 1445, 1453 (D. Kan. 1998) (quoting *Meyer v. Cloud County Bank & Trust*, 647 F. Supp. 974, 975-76 (D. Kan. 1986)).

Moreover, § 1962(c) requires that a RICO "enterprise" be distinct from the "person" who conducts the enterprise's affairs through a pattern of racketeering. *Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1146 (10th Cir. 1998). This distinctiveness requirement cannot be avoided by alleging a RICO enterprise that "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendants." *Dirt Hogs Inc. v. Natural Gas Pipeline Co. of Am.*, 2000 WL 368411, at *3 (10th Cir. Apr. 10, 2000) (citation omitted). Plaintiff cites the efforts of bank officers to foreclose on debts, which is not distinct from a bank's expected activities.

Plaintiff has asked the court for leave to amend its complaint if the court finds that the RICO claims have not been pleaded with the requisite particularity. Although insufficient particularity is one of the reasons the court dismisses the claim, it is not the sole reason, and the court finds that amendment would be futile. RICO was enacted because Congress found that "'organized crime in the United States [had become] a highly sophisticated, diversified, and widespread activity that annually drain[ed] billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption.'" *Beck v. Prupis*, 529 U.S. 494, 496 (2000) (citation omitted). The court declines to extend its reach to this case.

**K.     Count IX - RICO (18 U.S.C. § 1964(b))**

In Count IX, plaintiff alleges a RICO claim pursuant to 18 U.S.C. § 1964(b). This statute governs actions by the attorney general, and is not applicable to private lawsuits. *See* 18 U.S.C. § 1964(b) ("The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper."). The court dismisses Count IX for failure to state a claim.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss and/or for Summary Judgment of Defendant Community National Bank's Motion to Dismiss (Doc. 7) and the Motion to Dismiss and/or for Summary Judgment of Defendants William W. Altman, Jr., Jerry L. McPherson and Vernon Lynn (Doc. 12) are granted.

Dated this 4th day of January 2006, at Kansas City, Kansas.

          **s/ Carlos Murguia**
          **CARLOS MURGUIA**
          **United States District Judge**